IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| CHRISTINE JIMENEZ, | : |
| | : |
| Plaintiff, | : Civil Action No. 3:21-cv-589 |
| | : |
| v. | : |
| | : |
| EQUIFAX INFORMATION SERVICES, LLC, | : |
| EXPERIAN INFORMATION SOLUTIONS, INC, | : |
| and TRANS UNION, LLC, | : |
| | : |
| Defendants. | : |

## COMPLAINT

Plaintiff Christine Jimenez ("Plaintiff"), by counsel, files this Complaint against Defendants, Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services, LLC ("Equifax") (collectively, "Defendants"). Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages; costs; and attorneys' fees brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

2. The FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information." 15 U.S.C. § 1681 (emphasis added). To achieve its goals, the FCRA contains requirements and obligations that consumer reporting agencies must follow when consumers dispute the accuracy of the information reported in their credit reports. 15 U.S.C. § 1681i.

3. In this case, Plaintiff's mortgage servicer furnished inaccurate, derogatory information to Experian, Equifax, and Trans Union, which was ultimately reported on Plaintiff's credit reports. After Plaintiff disputed the inaccurate information with each of the consumer reporting agencies, Defendants failed to investigate Plaintiff's disputes or correct the inaccurate reporting.

4. As a result, Plaintiff alleges claims against Experian, Equifax, and Trans Union for failing to reasonably ensure the maximum possible accuracy of Plaintiff's credit reports in violation of the FCRA, 15 U.S.C. §1681e(b), and for failing to fulfill their reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 168l(p).

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to her claims occurred in this District and Division, where Plaintiff resides.

## PARTIES

7. Plaintiff Christine Jimenez is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

8. Equifax is a foreign limited liability company conducting business in Virginia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

9. Experian is a foreign corporation conducting business in Virginia. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

10. Trans Union is a foreign limited liability company conducting business in Virginia. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTS

### *Plaintiff's Mortgage*

11. Bank of America, N.A. ("BANA") services Plaintiff's mortgage loan.

12. Plaintiff is disabled and exempt from paying real estate taxes in Chesterfield County.

13. Plaintiff has held this tax-exempt status since before she obtained her current mortgage loan (a refinance of her previous mortgage).

14. Plaintiff has provided BANA with proof of her tax-exempt status each year.

15. Even so, BANA sent Plaintiff an Escrow Account Disclosure Statement which stated that Plaintiff's monthly mortgage payment would increase from $539.50 to $853.23 because it projected that she would owe $1,744.50 in county taxes for 2020.

16. This was inaccurate. Because Plaintiff is tax exempt, she only owed $25 for a stormwater runoff fee to Chesterfield County for 2020.

17. Plaintiff alerted BANA to its error multiple times, including by visiting her local BANA branch in Midlothian, Virginia on at least two occasions.

18. During these visits, Plaintiff spoke with a BANA customer service representative, Lena Malone, who told Plaintiff that the error would be corrected and that she should receive a revised escrow statement in 3 to 5 days.

19. Plaintiff continued making timely mortgage payments to BANA throughout 2020.

### *Defendants' Inaccurate Credit Reporting*

20. Despite paying her mortgage as required, Plaintiff learned in late 2020 that her credit reports reported her BANA mortgage as delinquent.

21. BANA reported Plaintiff's monthly mortgage payments were late starting in June 2020.

22. To be clear, this reporting was inaccurate. Plaintiff did not make any late payments on her mortgage loan.

23. In or around March 2021, Plaintiff disputed the late payments with Equifax, Experian, and Trans Union.

24. In response to Plaintiff's dispute, they Defendants failed to conduct an adequate investigation.

25. Instead, they forwarded Plaintiff's dispute to BANA and solely relied on BANA's investigation of Plaintiff's mortgage account without conducting any independent investigation to determine whether BANA's reporting was accurate.

26. As a result, Defendants did not correct the inaccurate information and continued to report Plaintiff's monthly mortgage payments as late. They also updated the reporting to reflect that she was $1,134 past due on her loan.

27. On April 21, 2021, Plaintiff sent a follow-up dispute letter to TransUnion, Experian, and Equifax disputing the inaccurate information that BANA was reporting about her mortgage. She enclosed proof of her tax exemption and showed that BANA's derogatory reporting occurred because it was inaccurately charging her for taxes.

28. In response to Plaintiff's dispute, each Defendant failed to conduct an adequate investigation into Plaintiff's disputes.

29. Instead, they forwarded Plaintiff's disputes BANA and solely relied on BANA's investigation of Plaintiff's mortgage account without conducting any independent investigation to determine whether BANA's reporting was accurate.

30. Defendants also refused to remove the inaccurate, derogatory information from Plaintiff's credit reports even though she provided supporting documentation showing that BANA's reporting was inaccurate.

31. As a result, Plaintiff's mortgage continued to report with a derogatory payment history and past due balance.

32. As a result of Defendants' conduct, Plaintiff suffered significant actual damages. For example, Plaintiff could not benefit from historically low interest rates to refinance her property because BANA was reporting her mortgage as delinquent. Her credit report was reduced and she also suffered emotional distress.

### *Defendants' FCRA Violations Were Willful*

33. Defendants continue to rely on BANA's credit reporting even though they know that BANA is an unreliable furnisher.

34. Discovery will show that each Defendants have received thousands of consumer disputes in which the consumer complained that BANA was inaccurately reporting the consumer's mortgage payment history, a past due balance, or the consumer's account status.

35. In addition, according to the Consumer Financial Protection Bureau, BANA was the second most complained-about mortgage servicer in January 2017, a statistic that includes complaints for negative credit reporting after losing timely mortgage payments. CFPB, January 2017 Monthly Complaint Report, Vol. 19, p. 14, 18 (available at https://www.consumerfinance.gov/about-us/newsroom/cfpb-monthly-snapshot-spotlights-mortgage-complaints/).

36. There are also more than 2,200 complaints in the CFPB consumer complaint database about BANA's reporting of inaccurate information on consumers' credit reports.

37. BANA also has been named as a defendant in hundreds of lawsuits by consumers alleging FCRA violations for inaccurate mortgage reporting. In many of these lawsuits, one or more Defendants were named as a co-defendant.

38. Despite notice of these lawsuits, no defendant has any procedures in place, at any stage of their relationship with a furnisher (such as BANA), to: (a) receive and review its credit reporting procedures; (b) receive and review its dispute investigation procedures; or (c) audit—even selectively—any of the furnisher's accounts or credit reporting to determine whether it is accurately reporting consumer file histories.

39. Discovery will show that in the last 10 years, no employee of TransUnion, Equifax, or Experian has had a telephone, video conference, or in-person meeting longer than 30 minutes to meaningfully ask about, learn or examine the procedures used by BANA to comply with the FCRA.

40. Moreover, as a standard practice, Defendants do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite many court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

41. Upon information and belief, and consistent with their standard policies and procedures, Defendants automatically generated their "investigation" results once BANA provided its responses to Plaintiff's disputes, verified BANA's reporting, and no employee took any additional steps after BANA provided its responses to Plaintiff's disputes.

42. Instead, Defendants blindly accepted BANA's version of the facts, despite knowing that BANA's credit reporting was unreliable, and continued to report the inaccurate, derogatory information on Plaintiff's credit report.

43. In addition, each Defendant has been sued in federal court by consumers alleging violations like the ones here, including that it inaccurately reported information from furnishers (like BANA) without ensuring that the information was as accurate as possible or by failing to adequately investigate and respond to a consumer's dispute.

44. Just in the last 12 months alone, Experian has been named in FCRA lawsuits over 1,200 times, Equifax over 1,800 times, and TransUnion over 2,300 times.

45. Defendants continue the practice of parroting the response from their furnishers even though they had been repeatedly sued for failing to conduct a reasonable investigation as required by the FCRA.

46. Defendants do not intend to modify their dispute-processing procedures because doing so would skyrocket their operating expenses.

47. Instead, Defendants intentionally choose not to comply with the FCRA to lower their costs and increase profits. By example only and without limitation, their conduct was willful because it was intentionally accomplished through intended procedures and because their efficiency in processing disputes is believed to be more important than making sure that the disputes are investigated accurately. As a result, Defendants' violations of the FCRA were willful.

**COUNT ONE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)**
**(Defendants)**

48. Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

49. Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparing Plaintiff's credit reports and credit files they published and maintained.

50. As a result of Defendants' conduct, Plaintiff suffered concrete and particularized harm, including, without limitation: inability to obtain a mortgage, a reduced credit score, and emotional distress.

51. Defendants' conduct in violating § 1681e(b) was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined under 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

**COUNT TWO:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681i**
**(Defendants)**

52. Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

53. Defendants violated multiple sections of § 1681i, including, but not limited to,: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the correct status of the disputed information in violation of § 1681i(a)(1); (2) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); (3) failing to promptly modify the item of information upon a lawful

reinvestigation of § 1681i(a)(5)(A); and (4) failing to promptly delete the disputed, inaccurate information from Plaintiff's credit file in violation of § 1681i(a)(5)(A).

54. As a result of Defendants' conduct, Plaintiff suffered concrete and particularized harm, including, without limitation: inability to obtain a mortgage; a reduced credit score; and emotional distress.

55. Defendants' conduct in violating § 1681i was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees in an amount to be determined under 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**CHRISTINE JIMENEZ**

By:  /s/ Kristi C. Kelly
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
*Counsel for Plaintiff*